better prepared to answer it than someone who's been through law school like myself, Your Honors. Clements v. Almeida. Go ahead, Counsel. May it please the Court, Your Honors. Patrick Ford on behalf of the appellant, Richard Clements. Your Honors, the present case, we believe, presents a classic issue of a constitutionally prohibited mandatory presumption. I'd like to ask you something about that preliminary. You keep saying it's a mandatory presumption. Have the California courts held that this is a mandatory presumption? The courts have not held that that is a mandatory presumption. There is a recent case which counsel has submitted in a supplemental briefing to the case where the dissent makes clear. Justice Klein, speaking for the dissent, says that it's absolutely a constitutionally mandatory, prohibited mandatory presumption. And she notes in the dissent, as we should note to this Court, that that issue may be resolved by the California Supreme Court. The issue that was raised in the case of Sewell, which counsel relies upon, is currently before the Supreme Court, so they may have the opportunity. Now, my next question, a related question, is, is the text of the trial court's instructions in this case part of the record before us? In other words, what I'm trying to get at is, did the court charge the jury that if you find these three LA to establish, that establishes the violation? Or did it say, if you find those three, you may conclude from those factors alone that there's a violation? Do we know what was actually charged? First, Your Honor, and again, I would, well, the dissent in the Pinkston case makes clear that under the language of the statute which was used in this case, when instructing the jurors, they were told that the element of specific intent is established upon proof of the violations. It is established or may be established? May be established. And let me answer in a second way in this manner, Your Honor. There is a case coming out of this circuit, the Ninth Circuit. I think what the Court is making a distinction is between the concept of a mandatory presumption and a permissive inference. Or a presumption that's non-mandatory that can be rebutted. Which I am not able to distinguish from a permissive inference, Your Honor, as I understand it, is one in which the jury is told that if you find this fact, then you may in fact find this element has been established. And I would point to the Court to the Ninth Circuit opinion in its Hanna v. Riveland, I believe, is the name of the case. In which the Court has said in a fairly similar fact pattern that it makes no difference for purposes of Sandstrom error, which is what we're calling this Sandstrom or Corella error. Whether or not the instruction took the form of a permissive inference or a mandatory presumption. In that case, and I'll give you the site for it, in Hanna v. Riveland, I believe, the facts of the case, it was a manslaughter case in which the element which needed to be proven in order to establish the manslaughter was a reckless driving on the part of the defendant. And the jury was instructed pursuant to a statute, I believe, that if it exceeded a certain limit, then the jury from that point may find that the element was established. And the Court found, specifically the Ninth Circuit, that in that situation, which I think answers the Court's question here, that it really makes no difference whether we're talking about a permissive inference or a mandatory presumption. I would tell the Court it is certainly our strong position that the jury in this case was instructed that if you find that there are different ways, perhaps, of finding the specific intent element, the felony intent element. And if you find that the traffic violations have been committed, then the element has, in fact, been established. That's our interpretation of the instructions. Kennedy. That's not an interpretation. That's an interpretation, but that's not what was said. I'm sorry. Can I just give you the citation for Hanna v. Riveland before I forget and get back to it? That's at, it's 1996, and it's 87F3, 1034. Wait a minute. Not so fast. 87F3. 1034, Your Honor. 1034. Right. Could California have made it a felony simply to identify driving while fleeing or attempting to elude a pursuing peace officer, during which time three or more violations are committed that are assigned a traffic violation point count under 12-8-10 or damage to property occurs? Could they have just said, that's a felony? They clearly had the ability to make that a felony. Then why isn't that exactly what they did here? Because what we have to. There are two ways to get there. You can either be willful or wanton, or you can commit three of these violations. Well, initially we have to make a distinction between the point in which the statute was allowed to be used for purposes of the felony because of the more complicated or the former prior. They could have done that. Keep in mind that the statute that was employed here is a felony, and for purposes of the felony murder rule, it does qualify. But keep in mind that it is what has some state court experience, is what's known as a wobbler. It's the lowest form of felony, chargeable either as a misdemeanor or a felony. The way it was rationalized for use elevated for purposes of the felony murder rule, however, was because of not the traffic infraction portion, but the higher intent element. And we would suggest to the court that this is not a situation where this was just an alternative means of producing it. Had the legislature intended, had it wanted to craft the statute that the court describes, it certainly could have done that. Instead, what the legislature did, and we believe this was kind of a gimmick, was to take a statute that already existed and made it easier for the prosecution to prove. It relieved or reduced the prosecution's burden on the essential element of the intent. And that's qualitatively different than simply defining this other element. Was the argument that you're making now made before the court of appeal? It was, Your Honor, and yes, and I'd like to address that. The issue of the mandatory prohibited presumption was raised in our brief before the state court. We raised it. We cited essentially the argument in the state court was that this felony of 2800.2 may not be used to support the second degree felony murder rule. And that if it is used as such, that it's violating the 6th and 14th Amendments under, and we cite Corella, which only stands for the proposition of this. The court of appeal didn't address that. That's correct, Your Honor. We argued the issue during argument before the court of appeal it was raised. Thereafter, in the petition for rehearing, we emphasized the issue of the mandatory instruction. And again, we highlighted the issue for the California Supreme Court. But we don't know why the court of appeals didn't discuss it. It's conceivable, isn't it, that it didn't discuss it because it didn't believe that this was a mandatory presumption. I'm not so sure. I suppose anything is possible, Your Honor. Let me ask you a slightly different question. Is the determination of whether something is or is not a mandatory presumption, is that strictly a question of state law or does federal law control that? I believe that's a question of the federal constitution, Your Honor, under the jury's Sixth Amendment right to have the jury determine the facts and also the Fourteenth Amendment right to due process. The cases make that clear. But the characterization of this particular statute, whether or not it can properly be viewed as a mandatory presumption, that, you think, is a federal question rather than a state law question. We believe that that is. The state addressed the issue in terms of the state law portion of that, and the state ignored the portion of that which highlighted the federal constitution. My question is let's assume we say we've got to decide here whether this is or is not a mandatory presumption, and it doesn't seem there's some problem with this. What law do we apply in deciding? Do we say state law determines whether this is a mandatory presumption or federal law determines whether this is a mandatory presumption? for purposes of determining the federal constitutional question. Maybe it's for the state to decide to characterize its own presumption. The concept of mandatory presumption apply a test. This is not a test that is applied differently depending upon whether you're in state or federal court. The simple test for whether or not this is a mandatory presumption is, A, when you instruct the jurors that they need only find certain predicate facts, once those facts are established, then an element of the crime is established. And, therefore, the definition is the same whether using any state or federal test. And so to the extent that — But as I understand what you're telling me, we do not have before us, do we, in this record, the text of the instruction by the state court. Is that — am I correct in that? I don't understand. What jury instruction are you challenging? Is it CALJIC number 3.33? It's CALJIC number 3.33 along with the standard instruction that goes along with 2800.2, Your Honor. Okay. And so I think what Judge Green is asking you is, are those instructions in the record, the instructions that were given? Yes. Those instructions have been lodged, and I believe they're included in the record, Your Honor. Why isn't this the answer to your contention? The California Court of Appeals says Clements misreads Vehicle Code Section 2800.2, which is a felony because it has the added element of driving the pursued vehicle with a willful and wanton disregard for the safety of persons or property. Subdivision A. Subdivision B of the statute does not make the commission of three or more traffic point violations an element of the offense. Rather, it provides that commission of three traffic point violations is one method of proving, proving the pursued vehicle was driven with a willful and wanton disregard for the safety of persons or property. And then they cite Sewell, and they say this B merely described a couple of non-exclusive acts that constitute drive for the safety of persons, not presumes, but, hey, the legislature said these acts constitute willful or wanton disregard. I'm not sure that that's not our argument, Your Honor. I believe that we have consistently said that. Well, they say you misread it. It's not a presumption at all. These are just non-exclusive acts that prove wanton and willful, not from which wanton and willful is presumed, but which prove. Whether it's established. Well, we believe that the constitutional issue, Your Honor, as I read it, has been and the issue that we raised has been in terms of mandatory presumption. My point, though, is here we have, this is a question of state law, whether you've got a presumption or not. And state law has told us this is not a presumption. This is just a non-exclusive way of proving. Your Honor, we'd simply say I agree that this jury was absolutely told that it was established. And if I may make the critical point. Was the word presumed. You may presume that the defendant's driving was wanton and willful. If you find that the defendant committed the following three. I'm not sure that the term presumed is such a matter of art that it's necessary, Your Honor. I think that this jury was told. So you can see the word presumed wasn't in there. Yes, that's fair enough, Your Honor. And if you tell me that it's never been our contention that they were. I'm critical on this whole thing, whether the jury was told you may conclude or infer from that, or whether the jury was told if those three things are shown, that establishes it. And it's our position that that's what the jury was told. I'm giving to you the instruction, and then you tell us what you think. Please. It says, in determining whether a person drives a pursued vehicle in a willful or wanton disregard for the safety of persons or property, you are instructed that a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing police officer, during which time either three or more violations of the vehicle code, which are assigned traffic violation points, occur. So you agree that's the instruction that was given? We agree that's the instruction, and we believe that by including the term includes, the critical point here is, Your Honor, is that we may make this additional point. The instruction and the presumption in this case was far more significant because of the nature of the defendant involved, because of the fact that we were dealing with somebody who was following his own car accident, that he had suffered severe. But again, it seems from what Judge Rawlinson has just read, that the jury was told only that if these three, that in determining wanton or willful disregard for the safety of others, you may rely on and include these things among other things. Yes, Your Honor. We would say that in light of the defendant, in this case the appellant's medical condition, the only possibility for proving this offense in the present case was through the traffic violations. He was incapable of forming that higher intent according to the uncontradicted medical evidence. And so the prosecutor told the court before trial that he was proceeding on the theory of the three traffic violations. He submitted the special instruction, CALJIC 3.33, which told the jury that these offenses are strict liability offenses, that they could essentially find the intent to commit the felony, which is what qualified this case for a murder prosecution, by the commission of three strict liability traffic infractions. And that point, again, was argued to the jury. So to the extent that hypothetically under a different scenario, had there been a different driver that was perhaps more, had a higher IQ, some of the arguments that you're saying I think might be more legitimate. But in this case, with this defendant and with the way the deed were given, including the instruction, using the word including, we believe that the jurors were informed that the element was established. And please also keep in mind that the jury sent a note to the court during deliberations, and they said essentially we don't understand, we're having difficulty understanding what's going on here. If we find the three point traffic violations, do we need to go any further? And also, would you please do us a favor and give us a clearer definition for the higher, it's a complex mental state that's required prior to the 1996 amendment. And they said we need additional information on conscious disregard. Can you please give it to us? And the court responded by rereading the three point traffic violations and responding, no, I will not tell you further. So the jury needed to know whether they could go any further, and they were told essentially since they were confused as to one point, and we should all put ourselves in the position of the jurors in that situation. If you do not understand when you're deliberating a case, the higher intent, and somebody tells you you may resolve that by simply finding the three infractions. I think that is a foregone conclusion, and the guilty verdict was rendered shortly after that. Which means they dispelled their confusion. Which means that they decided to put their confusion aside and find the felony intent based upon the strict liability offenses, for which no thought was required. Do you have a couple minutes left? Do you want to save it for rebuttal? I will, thank you, Your Honor. Good morning, Your Honors. Deputy Attorney General Randall Einhorn on behalf of Respondent and FLE. With respect to the issue that we pretty much talked about thus far, the district court here properly concluded that petitioner's claim dealing with the interpretation and application of 2800.2 of the vehicle code section of California does present only a matter of stance. District court also correctly concluded that in any event, the state court reasonably... Why was it only a matter of state law? Because the state had determined that this was not a conclusive presumption? Well, that is true, and I'll explain why that's true. At the time that the state and the district court both discussed the application of the B section, which told how you can prove it by three or more traffic violations. In reference to the earlier... I think it was Judge Friedman who asked about the jury instructions, and the ones that Judge Rawlinson read are CT 88, is where the jury instruction is 12.85. It's a clerk's transfer of 88. But indeed, since the briefing in this matter, the Pinkston case that was in the letter to the court and counsel, specifically the dissent aside, as counsel spoke about, the Pinkston case in discussing the United States Supreme Court case of Stanstrom is relied on by a petitioner's briefing, specifically rejected the unconstitutional mandatory presumption argument. Pinkston explained that 2800.2B does not state a mandatory presumption, but sets forth the legislative definition of what qualifies as willful or wanton conduct under subdivision A. Thus, subdivision B establishes a rule of substantive law, rather than a presumption apportioning the burden of persuasion. But counsel, when it's given as a jury instruction, coupled with CALJIC 3.33, which says that the intent of the defendant is irrelevant, does that change the analysis? I haven't looked at the CALJIC 303. 3.33. 3.35. And I don't know how that exactly interplays, but the 12.85, as Judge Trott mentioned, just talks about it's a non-exclusive way of showing it. You can show it either by conscious disregard, or you can show it by the violation of three traffic point infractions. Of course, you also have the intent to flee, to begin with. You have to be intentionally fleeing, and then you have to either have the conscious disregard. You have to have a willful or wanton conduct, which can be shown either by conscious disregard or by the violation of the traffic points. And that is tracking the exact language of 2800.2 A and B, and that exact language is encompassed in 12-point jury. Counsel, 3.33 CALJIC says in the crime charged in count, or the crime of which blank is or are lesser crimes thereto, the doing of the act is a crime. The intent with which the act is committed is immaterial to guilt. That appears to read out the intent requirement. Well, clearly that was referring to count one? I don't know. That's just CALJIC 3.33. Well, clearly there is an intent to evade, which is set forth particularly with respect to the evading charge, which elevated this to encompass the felony murder situation. Do you know where in the record the version of CALJIC 3.33 was given to the jury so we can see exactly what the court said in modifying CALJIC 3.33? I don't, Your Honor. There really wasn't any discussion in any of the briefings discussing the interplay of those two, and we were pretty much focusing just on 1285. But I would submit that obviously that instruction, well, I won't say obviously, but that's one of the standard instructions, and I'm sure that was given in Pinkston as well, which discussed this particular issue directly on point, that it wasn't a mandatory presumption. Pinkston both discussed Sewell and talked about how you can prove felony evading based on the three traffic violations, and that is an inherent dangerous felony invoking second-degree felony murder, and then went beyond Sewell and also discussed the Stanstrom issue and held that it's not a mandatory. Can you raise something related, one other thing? Sure. If, in fact, this is not a mandatory presumption, that's the end of his constitutional argument, isn't it? Yes. His whole constitutional argument is that this is an impermissible mandatory presumption. That's my take of it. Now, is it your position that the State court has held in this case that it's not a mandatory presumption and, therefore, there's no real constitutional issue remaining in the case? No. It's not my position that, well, the State court here did not, to my recollection, specifically address. It just said Clements misreads the statute and then imperates Sewell. Right. So, I mean, it didn't delve into that niche of whether this was a mandatory presumption, but, in essence, in rejecting his argument, I suppose we can say that the State court found no constitutional violation, be it State or Federal. And then I raise the next question, whether the characterization of this statutory scheme as a mandatory presumption, or is it clear that that is a matter of State law, or, for purposes of the Federal constitutional questions, may it be a Federal question? How one characterizes what the State has done in this statutory scheme? Well, I would submit that it's a matter of State law and interpretation, and that merely. . . I'm not saying interpretation. This isn't interpreting what it means. This is how you characterize it. In other words, is it something that the jury can. . . Once this is established, these three things are established, the jury is required to conclude from that that there's been a wanton and willful disregard of safety. Is that determination a Federal question or a State question? I don't know. I'm just curious. Our position is that it's a State question. This is the interplay of the California Vehicle Code Section A and B and how you can prove that offense and what constitutes willful or wanton behavior under the State statute here, and that it's a State law issue, and merely saying it's the Sixth Amendment or Fourteenth doesn't. . . Have the California courts in other cases held that this is not a mandatory presumption, this is something else, whatever it is? Yes, Pinkston specifically. What's the status of Pinkston? That was decided in a split two-to-one vote. Judge John Dempsey Klein, I guess it was, dissenting in September of 2003. Yes. Is that pending before the Supreme Court? Is there any subsequent history on that case? To my knowledge, there isn't, but I haven't checked it. You haven't checked? I haven't checked. . . Well, the pending, not since a week or so. To the best of my recollection, the last time I looked at it was last week. Is it final in the Court of Appeal, or are there any petitions for re-hearing in the Court of Appeal? I can't tell you this. I'm sorry, I don't know the answer to that. It would be nice if you had the answer to that. I can certainly tell you shortly after argument concludes, but I don't know. If it's not final, what good is it? Well, I would submit that that case is just sort of icing on the cake, so to speak, to support the argument that it's not a mandatory presumption, but that the state courts hear. That argument was presented to the state court in this case earlier, and it was rejected. And, in fact, even the district court had talked about how it's . . . They went into the merits, but talked about . . . Well, that it's both a state court issue and that it's not a mandatory presumption, but merely one method whereby they can prove the case. So you can take a bunch of traffic violations that involve no mens rea at all and convert them into second-degree felony murder under California law? Well, not exactly. You can take three or more point violations and combine that with intentionally evading an officer, and it becomes a felony offense. And thereafter, if you kill someone while doing that felony evading, second-degree felony murder is invoked. You have to prove an intent to evade the officer? Absolutely. Yes. That isn't challenged here, is it? No, it's not. Do you have anything else, counsel? Let me quickly look here. I would just point out the jury question issue that Mario came up and pinks for what it's worth. But in this case, the judge did reread the instructions to the jury. The jury had some comments on that, and then the judge just directed them to . . . The counsel was no longer there, and the judge told the jury, I'm not sure I understand your question. Now, if you want to reformulate a question, go ahead and write it down and submit it, and we'll try and come up with an answer. And as an aside, thereafter, I think one of the juries had to be dismissed because they had to travel, and then an alternate was put in, and they were told to restart deliberating from anew, and there was no further question ever submitted to the court. So the implication that there was some confusion I don't think is necessarily supported by the record. Let me also point out just the harmless error argument, just for some reason that . . . The district court did note here that even if there was some sort of instructional error as to an evidentiary presumption that it was harmless because, quote, as the district court said, the speeds the Clemens attained while being pursued by a police car with lights and siren, the reckless running of the stoplights, driving up an embankment, driving down the middle of a two-lane road and straddling double yellow lines at high speed, and entering a school zone without slowing down, all despite the urges of his passenger to stop, amply demonstrate not only his intent to evade the police officer, but also demonstrates recklessness and a willful and wanting disregard for the safety of persons or property. Doesn't that assume a person of normal intelligence and mental capacity, though? And that's the problem in this case. You've got somebody with serious brain damage who doesn't have normal mental capacity. Well, I would submit to the degree of recklessness in this case and the degree of evading, whereas the pursuit is going on relatively long and the defendant stops at some point and the officer tries to ram him, he steps up on something, and the officer again debates whether to ram him and he flees further. That sort of undercuts some sort of quick, rash, non-thinking, non-capacity. Was there any evidence in the record of what he said or did immediately when he was apprehended after these deaths? Yeah, there was. He said something like, it's my responsibility or something like that. He said something in the effect of, here we go, I effed up, sir. I was wrong. I take full responsibility. I was running from the police. I don't know why. I just didn't want to get caught. And again, if you remember, it was related to another issue that wasn't on this appeal, is that he had previously made the comment to someone else that, hey, I cannot run any cop on the road. So I would submit that. I would submit in sum that the district court did correctly defer to the state court's interpretation of state law here and that they found out, the district court correctly found that in any event, there was no instructional error. And further, if there was instructional error, it was harmless. And the state court's decision, most importantly, was not contrary to or an unreasonable application of federal law as clearly established by the United States Supreme Court or an unreasonable determination of the facts. We didn't really go into his second argument, I guess, unless the court has specific arguments dealing with the defense psychology expert's testimony, which was the second argument on the appeal. I'll be happy to address that. But if not, I guess we'll just leave that for the briefing. All right. Thank you very much. Thank you, Your Honors. Just briefly, initially in response to Judge Rawlinson's question, CalCHIP 3.3, R-61, Your Honor, is what we have in our brief. Next, I would like to simply address, I know that Judge Friedman considers this to be an important issue, and the fact that the state court ignored the federal constitutional issue, I don't believe can be seen to be a ruling that the court understood and dismissed the issue. Instead, the court in that regard was confronted with initially a state court issue, which is whether or not the felony qualified under the felony murder rule, and the alternative argument was that if it did qualify, that it violated the due process clause. I believe that the state's argument and the court's to this point have been a little bit confusing by referring to this issue as a state court, as a state issue, when I think that what they were referring to clearly is the initial point that was raised in the argument, and that was whether or not the Section 2800.2 qualified. We do not challenge that here. We concede that point for the issue of this discussion, that the state law was properly applied. The question before this court, as it was before that court as an alternative or as a backup, was whether or not assuming that that application of that statute complied with state law, whether or not the federal constitution was violated. What do you do with Pinkston that says this isn't a mandatory presumption at all? They cite Sewell, and they say this is just a way to prove the crime. Well, we would just simply say that we believe that the Pinkston logic was flawed for the reason that the court cited in Reliance said, the majority in Pinkston said this case is much like the California drunk driving law. The Pinkston logic may be flawed in your view, but it's the state law unless it's been overturned. Do you know anything about the status of Pinkston? Your Honors, I likewise apologize for not having that status, but I can tell you that the, which will probably consume the alternative issue in Pinkston, and that's why Justice Klein Dempsey noted that it is currently before the Supreme Court, so we will have a response to that. Sewell is currently before the Supreme Court? The issue that was raised in Sewell, and the viability of 2800.2 as a predicate crime for second. It is called what? Pinkston. Oh, excuse me, Your Honor. I have it right here. People v. Howard. It was an unpublished case, but it's S-10. People v. Howard. That's not published? That's correct, and it's currently before the Supreme Court. It was non-published by the Court of Appeal. Counsel, the cases you rely upon, Sandstrom and Francis and Sullivan, all had pretty discreet instructions that incorporated the presumption and directed the jury that it was not published. They all shared the element, Your Honor. I'm sorry, I see that I'm running out a little bit, but they all shared the element. Of instructing the jurors that if they found predicate facts, that they could assume. Presume. That they, yeah. Isn't this case more of a permissive presumption, if a presumption at all, as opposed to a mandatory? Permissive inference. I'm sorry. It may be, Your Honor. I don't believe that the language is specific enough to tell us either way, but I think that this jury clearly knew that the element of intent was established as soon as they found the three strict liability traffic offenses. I'm not sure the jury instruction met the same kind of concreteness that the jury instructions did in Sandstrom, Francis, and Sullivan. And my inclination is if that's true, then you don't have clearly established Supreme Court precedent to support your habeas. I believe we do, Your Honor, simply by virtue of my earlier words. This was less poorly, more poorly drafted. Okay. I don't believe. Also, we go back to Hannah v. Rivlin for the argument that if it was a permissive inference rather than a mandatory presumption, that the same Sandstrom error applies. And so under Van Tran v. Lindsay and the Ninth Circuit law being persuasive on the issue, we would submit grounds. Thank you, counsel. The case just argued is ordered submitted, and we will be in recess until tomorrow morning at 9 o'clock sharp. All right. The scope of this session is now adjourned. I know. Okay. Okay. Thanks. Yeah, because... Yeah, I thought he knew, and then I realized I didn't see the... I'll come with you. All done.
judges: Friedman, Trott, Rawlinson